**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| Lawrence General Hospital, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) 22-10979-NMG |
| Continental Casualty Company, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises out of a dispute between Lawrence General
Hospital ("LGH" or "plaintiff") and Continental Casualty Company
("Continental" or "defendant") about whether certain costs and
lost revenue related to the COVID-19 pandemic are recoverable
under a commercial property insurance policy.  Pending before
the Court is defendant's motion to dismiss plaintiff's amended
complaint in its entirety.  For the reasons that follow, the
motion will be allowed.

## I.  Background

### A.  Factual Background

LGH is a Massachusetts corporation that operates a
nonprofit community hospital in Lawrence, Massachusetts and
other facilities in Massachusetts and New Hampshire.  It brings
this suit under a property insurance policy with a one-year term

- 1 -

issued to LGH by Continental on October 1, 2019 ("the Policy").
LGH claims that it is entitled to coverage under several
provisions of the Policy.

The Policy provides Business Interruption Coverage and
Extra Expense Coverage in the event of "direct physical loss of
or damage to" pertinent property.[1]  Those provisions are
expressly limited to the length of time necessary "to rebuild,
repair or replace [the] damaged or destroyed" property.  The
Policy also contains a Health Care Endorsement which provides
Disease Contamination Coverage in the event of "an evacuation or
decontamination order at a [covered] location" arising from the
discovery or threat of a communicable disease.

During the term of the Policy, the emergence of the COVID-
19 pandemic irreparably affected the lives and livelihoods of
everybody in this country.  Plaintiff changed its operational
priorities, delivery of medical care, staffing decisions and
cleaning procedures.  In the spring of 2020, Massachusetts state
officials issued a statewide order to postpone elective
surgeries.  Such surgeries were allowed to resume, in part,
within a few months and then more readily thereafter.  LGH

---

[1] The Policy also provides, _inter alia_, Decontamination Expense
Coverage, Contingent Business Interruption Coverage, Denial of
Access by Civil Authority Coverage and Ingress-Egress Coverage
that are all contingent upon physical damage to and/or physical
loss of property.

contends that it was forced to "evacuate" its facilities by virtue of those orders and other guidance issued by, e.g. the Centers for Disease Control and Prevention ("CDC").  Those "evacuation" orders applied to everyone other than certain emergency personnel and patients requiring essential care.

LGH further alleges that it was required to incur a variety of additional expenses in order to clean and restore its property after the onset of COVID-19.  LGH suggests that those expenses were the result of direct physical damage caused by the pervasive presence of the SARS-CoV-2 virus at its insured facilities.  According to the amended complaint, the virus physically altered its insured property by forming chemical bonds with surfaces and mixing with air particles.

In April, 2020, LGH provided notice of loss to Continental for its damages beginning on March 16, 2020.  Continental denied coverage under the Policy in June, 2020, and has not paid any part of LGH's claim.

### B.  Procedural Background

In March, 2022, plaintiff filed its original complaint in the Massachusetts Superior Court for Suffolk County.  Defendant removed the case to federal court on diversity grounds after which LGH filed an amended complaint in this Court in June, 2022.  At that time, the Court adopted a briefing schedule suggested by the parties with respect to Continental's motion to

dismiss.  Defendant moved to dismiss plaintiff's amended
complaint in August, 2022, and the parties have since submitted
multiple rounds of briefing concerning that motion.

## II.  Motion to Dismiss

### A. Legal Standard

To survive a motion to dismiss under Fed. R. Civ. P.
12(b)(6), the subject pleading must contain sufficient factual
matter to state a claim for relief that is actionable as a
matter of law and "plausible on its face." Ashcroft v. Iqbal,
556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly,
550 U.S. 544, 570 (2007)).  A claim is facially plausible if,
after accepting as true all non-conclusory factual allegations,
the court can draw the reasonable inference that the defendant
is liable for the misconduct alleged. Ocasio-Hernandez v.
Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

When rendering that determination, a court may consider
certain categories of documents extrinsic to the complaint
"without converting a motion to dismiss into a motion for
summary judgment." Freeman v. Town of Hudson, 714 F.3d 29, 36
(1st Cir. 2013) (citing Watterson v. Page, 987 F.2d 1, 3 (1st
Cir. 1993)).  For instance, a court may consider documents of
undisputed authenticity, official public records, documents
central to a plaintiff's claim and documents that were

- 4 -

sufficiently referred to in the complaint. <u>Watterson</u>, 987 F.2d at 3.

A court may not disregard properly pled factual allegations in the complaint even if actual proof of those facts is improbable. <u>Ocasio-Hernandez</u>, 640 F.3d at 12. Rather, the court's inquiry must focus on the reasonableness of the inference of liability that the plaintiff is asking the court to draw. <u>Id.</u> at 13.

**B. Application**

The primary question at issue in the case at bar is whether plaintiff has alleged that it suffered "direct physical loss of or damage to" covered property, which it must do in order to obtain coverage under most of the provisions upon which it relies. A similar question has been answered by many courts across the country during the past two years, including this Court but issues raised by variations of policy language, state law and factual allegations continue to appear.

The parties also dispute whether plaintiff is entitled to coverage under the Disease Contamination Coverage provision mentioned above (<u>i.e.</u> certain damages and expenses resulting from "an evacuation or decontamination order at a [covered] location . . . .").

It is undisputed that Massachusetts law applies to the interpretation of the Policy and that the interpretation is a

question of law for the court to decide. See <u>Ruggerio Ambulance</u>
<u>Serv.</u> v. <u>Nat'l Grange Mut. Ins. Co.</u>, 430 Mass. 794, 797, 724
N.E.2d 295, 298 (Mass. 2000).  Under Massachusetts law, courts
are to

> construe an insurance policy under the general rules
> of contract interpretation, beginning with the actual
> language of the polic[y], given its plain and ordinary
> meaning.

<u>Easthampton Congregational Church</u> v. <u>Church Mut. Ins. Co.</u>, 916
F.3d 86, 91 (1st Cir. 2019) (quoting <u>AIG Prop. Cas. Co.</u> v.
<u>Cosby</u>, 892 F.3d 25, 27 (1st Cir. 2018)).  Although ambiguous
words or provisions are to be resolved against the insurer, <u>id.</u>
at 92,

> provisions [that] are plainly and definitely expressed
> in appropriate language must be enforced in accordance
> with [the policy's] terms.

<u>High Voltage Eng'g Corp.</u> v. <u>Fed. Ins. Co.</u>, 981 F.2d 596, 600
(1st Cir. 1992) (quoting <u>Stankus</u> v. <u>New York Life Ins. Co.</u>, 312
Mass. 366, 369, 44 N.E.2d 687, 689 (1942)).

    **1.  Breach of Contract (Count I)**

        **a.  Direct Physical Loss of or Direct Physical
        Damage to Property**

Defendant seeks dismissal of plaintiff's claim of breach of
contract on grounds that plaintiff has not pled facts which show
direct physical loss of or damage to property.  The
Massachusetts Supreme Judicial Court ("SJC") and the First
Circuit Court of Appeals ("First Circuit") have both issued

instructive decisions on the meaning of "direct physical loss of

or damage to property" in the past year.  In the first of those

cases to be decided, Verveine Corp. v. Strathmore Insurance

Company, the SJC held that the phrase refers to a "distinct,

demonstrable, physical alteration of the property."  489 Mass.

534, 542, 184 N.E.3d 1266, 1275 (Mass. 2022) (quoting Couch on

Insurance 3d § 148:46 (rev. ed. 2016)).

     The SJC then noted that the policy at issue there referred

to a period of restoration during which the covered property

"should be repaired, rebuilt or replaced[.]"  The Verveine Court

held that the subject phrase

          clearly implies that the property has not experienced
          physical loss or damage in the first place unless
          there needs to be active repair or remediation
          measures to correct the claimed damage[.]

Id. at 1275 (citing Sandy Point Dental, P.C. v. Cin. Ins. Co.,

20 F.4th 327, 333 (7th Cir. 2021)).  In the pending case, the

Policy contains similar language limiting LGH's potential

recovery for loss or expenses to the length of time it would

take "to rebuild, repair or replace [the property that] has been

damaged or destroyed".

     The SJC applied the standard of "demonstrable, physical

alteration of the property" to the claims in Verveine, crediting

the complaint's premise that the alleged interruption of

business was caused by the actual "presence of the virus on

surfaces and in the air" rather than by the risk of person-to-person contamination at the premises.   The Verveine Court nevertheless held that "mere presence does not amount to loss or damage to the property." Id. at 1276.  Because there was no physical damage to the property and the plaintiffs were not otherwise "deprived of possession of their property," there was no physical loss. Id. at 1277.

With respect to the presence of a harmful substance in the air, the SJC contrasted

> [e]vanescent presence . . . that will quickly dissipate on its own [with] persistent pollution of a premises requiring active remediation efforts[.]

Verveine, 184 N.E.3d at 1276.

Although persistent pollution may constitute physical alteration to property, temporary presence of particles does not.  Similarly, as to the presence of a harmful substance on a surface, the SJC drew a distinction between "surface-level contamination that can be removed by simple cleaning" and physical alteration caused by "saturation, ingraining, or infiltration of a substance into the materials of a building". Id.

The Verveine decision thus clarifies the meaning of "physical loss of or damage to" property under Massachusetts law and provides guidelines for evaluating allegations related to COVID-19.  Continental, citing Verveine and several other of the

litany of similar cases, contends that LGH has failed to allege
the kind of physical alteration to property necessary to obtain
coverage.  LGH rejoins that the holding in <u>Verveine</u> is not a <u>per</u>
<u>se</u> rule establishing that SARS-CoV-2 cannot cause physical loss
of or damage to property.

In further support of its contention, LGH cites the First
Circuit's decision in <u>SAS Int'l, Ltd.</u> v. <u>Gen. Star Indem. Co.</u>,
36 F.4th 23 (1st Cir. 2022).  That decision affirmed the
dismissal of an insured's complaint based upon <u>Verveine</u> because
the allegations did not allege anything more than evanescent
presence of the virus or presence that could be remedied by
simple cleaning. <u>Id.</u> at 27-28.  LGH contends that its amended
complaint meets the pleading standard which the plaintiffs in
<u>Verveine</u> and <u>SAS</u> did not because 1) as a hospital facility, it
is distinguishable and 2) it has alleged additional details
about the affected surfaces and air, its extensive cleaning
efforts and the constant reintroduction of SARS-CoV-2 to its
property.

With respect to the effect of virus particles on surfaces,
plaintiff avers that such particles "adsorb" to surfaces by
forming a chemical bond.  They may adhere for up to a month and
remain infectious for up to a week depending on the initial
viral load and the kind of surface.  Notwithstanding the
invocation of adsorption and the description of how chemical

bonds create a bridge between different substances, plaintiff's allegations nevertheless reveal SARS-CoV-2 to be a surface-level contaminant rather than a substance which saturates, ingrains or infiltrates into physical materials. Verveine, 184 N.E.3d at 1276.

The danger posed to individuals was from evanescent viral particles that might detach from surfaces, not from property which had been physically altered.  Without constant re-introduction of viral particles to surfaces by various outside sources, the virus would soon have become inactive or been removed. See Legal Sea Foods, LLC v. Strathmore Ins. Co., 36 F.4th 29, 36 (1st Cir. 2022); SAS Int'l, 36 F.4th at 28. Plaintiff's allegations do not suggest that the extant SARS-CoV-2 particles on any of its surfaces constituted a distinct physical alteration rather than a transient, repeated presence.

LGH further contends that it took more than simple cleaning to remove SARS-CoV-2 to a sufficient degree for LGH to carry out its operations safely.  Instead, LGH had to sterilize supplies and equipment, procure and replenish masks and HEPA filters, deep clean HVAC systems and carry out other enhanced cleaning procedures with special products.  Nevertheless, those cleaning and disinfecting activities are not the sort of "active repair or remediation measures" suggested by the Policy's reference to

rebuilding, repairing and replacing "damaged or destroyed"
property.  Plaintiff's cleaning and disinfecting efforts were
directed toward the physical properties of the virus and its
potential to harm exposed individuals but did not actively
remediate any direct physical damage to the property itself.
See Verveine, 184 N.E.3d at 1273 (explaining that direct
physical damage "characterizes what effects the covered causes
must have on the property to trigger coverage").

Nor has LGH alleged that SARS-CoV-2 particles were
something other than an "evanescent presence" in the air which
would dissipate over time.[2]  Although the amended complaint avers
that the virus mixed with air particles and could not be
eradicated by ordinary cleaning measures because it was
repeatedly reintroduced to covered property, such facts are
indistinguishable from the mere and unremarkable presence of
viral particles in the air.  If the persistence of SAS-CoV-2 in
an atmospheric environment depends upon the constant
reintroduction of the virus to that environment by external

---

[2] As defendant points out in its briefing, there is some debate
over whether damage to air can trigger coverage under property
insurance in any event.  See, e.g., Tapestry, Inc. v. Factory
Mut. Ins. Co., 482 Md. 223, 249–50, 286 A.3d 1044, 1059 (Md.
2022) ("We are not aware of any reported decisions that have
treated damage to air itself . . . as property damage.").  This
Court need not reach that issue in the pending case.

human sources, the virus particles constitute nothing more than
an evanescent, rapidly dissipating presence. See <u>Legal Sea
Foods</u>, 36 F.4th at 35-36; <u>SAS Int'l</u>, 36 F.4th at 27-28 (holding
that allegations about the constant reintroduction of the virus
did not constitute an allegation that the virus itself would not
"quickly dissipate on its own").

Plaintiff asserts that several pre-<u>Verveine</u> cases regarding
microscopic particles other than viral particles - including
<u>Matzner</u> v. <u>Seaco Ins. Co.</u>, 1998 WL 566658 (Mass. Super. Ct. Aug.
12, 1998), <u>Essex Ins. Co.</u> v. <u>BloomSouth Flooring Corp.</u>, 562 F.3d
399 (1st Cir. 2009) and <u>Arbeiter</u> v. <u>Cambridge Mut. Fire Ins.
Co.</u>, 1996 WL 1250616 (Mass. Super. Ct. Mar. 15, 1996) - support
its theory of physical damage to property.  In <u>SAS Int'l</u>,
however, the First Circuit explained that the SJC's decision in
<u>Verveine</u> distinguished the temporary presence of SARS-CoV-2
introduced by "discrete individuals entering the relevant
premises" from the buildup of carbon monoxide caused by a
physical chimney blockage in <u>Matzner</u>. <u>SAS Int'l</u>, 36 F.4th at 28.
Neither <u>Matzner</u> nor the other cases cited by plaintiff persuades
the Court to adopt a different conclusion. See <u>Legal Sea Foods,
LLC</u> v. <u>Strathmore Ins. Co.</u>, 523 F. Supp. 3d 147, 152-53 (D.
Mass. 2021), aff'd, 36 F.4th 29 (1st Cir. 2022); <u>Kamakura, LLC</u>
v. <u>Greater New York Mut. Ins. Co.</u>, 525 F. Supp. 3d 273, 282-83
n.8 (D. Mass. 2021) (noting that <u>Matzner</u> and <u>Arbeiter</u> relied on

out-of-state precedent and that there is "reason to question whether those decisions are correct").

LGH also refers to a purportedly intensifying "drumbeat" of out-of-state decisions permitting similar claims to proceed past the motion to dismiss (or, in some states, demurrer) stage. The cases upon which plaintiff relies may amount to a hum but not a drumbeat. For instance, LGH cites to Marina Pacific Hotel & Suites, LLC v. Fireman's Fund Ins. Co., 81 Cal. App. 5th 96 (July 13, 2022). That decision involved distinct policy language and a different pleading standard. Id. at 112 (noting that the coverage under the policy at issue referred to "direct physical loss or damage . . . caused by or resulting from a covered communicable disease event"). The California appeals court recognized that its decision was

> at odds with almost all (but not all) decisions considering
> whether business losses from the pandemic are covered by
> the business owners' first person commercial property
> insurance.

Id. at 109. It attributed the difference in outcomes, in part, to the "significantly different" pleading standard applied in federal court. Id.

Furthermore, plaintiff's sur-reply discusses a recent decision of the Supreme Court of Vermont at length. See Huntington Ingalls Indus., Inc. v. Ace Am. Ins. Co., 2022 VT 45, 287 A.3d 515 (Vt. 2022). The majority opinion in Huntington

concedes its divergence from the SJC's conclusions in Verveine
and the "majority approach" of federal and state courts. Id. at
525.  The Huntington majority instead relied upon Vermont's
extremely liberal pleading standard to accept, over a dissent,
that the "presence of a virus on a surface physically alters
that surface in a distinct and demonstrable way". Id. at 535-36.
The SJC has held, to the contrary, that the evanescent presence
of a surface-level contaminant does not constitute physical
damage to property. See Verveine, 184 N.E.3d at 1276.  This
Court concludes that LGH has alleged precisely that kind of
temporary presence of the SARS-CoV-2 virus.

Despite the length and detail of plaintiff's amended
complaint, it does not contain non-conclusory factual
allegations that virus particles physically altered the insured
property.  Thus, plaintiff cannot obtain coverage on the grounds
that it suffered direct physical damage to its property.
Furthermore, LGH's contention that it is entitled to coverage as
the result of a direct physical loss of property is unavailing
because it did not suffer a total deprivation of its property.

Although a physical loss of property can occur without
demonstrable physical damage, it requires a complete deprivation
of the property such as that resulting from theft or
disappearance. See id. at 1274 n.12.  LGH contends that the
Policy provides coverage for direct physical loss in the event

of a partial deprivation of property because various coverage provisions refer to the partial operation of business at covered locations.  Such provisions may limit the scope of LGH's recovery in other circumstances by requiring mitigation or may apply where there has been some direct physical damage that leaves part of the business operational but they do not affect the unambiguous meaning of a direct physical loss under Massachusetts law. See, e.g., Legal Sea Foods, 36 F.4th at 36 (holding that plaintiff had not suffered a direct physical loss of its property because it had alleged only a partial loss of the use of its premises).

Thus, the Court concludes that plaintiff is not entitled to coverage under the Policy based upon any of its provisions which require either physical damage to or physical loss of insured property.

### b.  Disease Contamination Coverage

Defendant also seeks dismissal of plaintiff's claim for breach of contact related to the Disease Contamination Coverage provision of the Policy.  That provision applies to certain categories of losses caused by

> an evacuation or decontamination order at a [covered] location by the National Center for Disease Control, authorized public health official or governmental authority because of the discovery or suspicion of a communicable disease or the threat of the spread of a communicable disease . . . .

Defendant propounds two principal reasons why LGH is not entitled to coverage.  First, it contends that the provision applies only when a pertinent order is directed at a particular covered facility because of the discovery, suspicion or threat of a communicable disease at that location.  In other words, it asserts that generally applicable governmental orders based upon regional circumstances cannot serve as the catalyst for coverage.

Defendant also contends that none of the orders at issue can be classified as evacuation or decontamination orders under the Policy.  The term "evacuation" was not purportedly used in any of the orders.  "Decontamination" was used once but not as a directive requiring plaintiff to take any active steps.  Continental avers that the orders instead required only the postponement of elective surgeries and other modifications to treatment priorities and cleaning practices.

LGH rejoins that Continental has mischaracterized its allegations and the orders to which it was subject.  Plaintiff alleges that it was, inter alia, ordered to engage in "thorough cleaning and disinfection" which required hiring more cleaning staff and reducing patient hours.  LGH also submits that it had to "evacuate" certain staff and patients who were not involved in COVID-19 treatment or other emergency medical treatment so

that it could accept and treat COVID-19 patients.  Plaintiff
claims that its insured facilities

> were effectively evacuated of all patients and staff
> except for those needing and performing emergency or
> urgent care.

Plaintiff's attempt to construe the subject orders as
requiring "evacuation" and/or "decontamination" is unavailing.
See, e.g., Connecticut Children's Med. Ctr. v. Cont'l Cas. Co.,
581 F. Supp. 3d 385, 393 (D. Conn. 2022) (distinguishing between
orders that required plaintiffs to modify their healthcare
business and undertake additional sanitation efforts from orders
that "required them to altogether evacuate [or decontaminate]"
their facilities).  Given the allegations set forth in the
amended complaint, coverage would be available here only if the
term "evacuation order" extended to a change in the composition
of the staff and patient population at insured locations due to
the suspension of certain elective, non-urgent operations.  That
interpretation would, however, be an unwarranted expansion of
"evacuation order" that would diverge from the plain meaning of
the term and ignore the context of the Policy.  Likewise,
governmental directives and CDC recommendations to implement
anti-COVID-19 procedures such as social distancing or additional
cleaning between patient visits do not constitute
decontamination orders under the Policy.

Although plaintiff reminds the Court that any ambiguity in the Policy should be interpreted against Continental as the insurer and the policy drafter, there is no ambiguity here.  LGH is not entitled to recover under the Disease Contamination Coverage provision of the Policy because it was not subject to an applicable "evacuation or decontamination order".  The Court need not consider Continental's alternative argument that the provision would apply only if an order was directed at a particular insured location due to a specific communicable disease finding at that location.

### 2.  Declaratory Judgment (Count II)

Plaintiff seeks a declaratory judgment that it is entitled to coverage under the Policy and that defendant's assertion to the contrary is incorrect.  Having determined that plaintiff has failed to plead facts sufficient to state a claim for coverage under the Policy, the Court will dismiss Count II.

### 3.  M.G.L. c. 93A & c. 176D (Count III)

There typically is no violation of the Massachusetts Consumer Protection act for unfair and deceptive acts when an insurer has properly denied coverage under the policy at issue. See Legal Sea Foods, 523 F. Supp. 3d at 154; cf. Kamakura, 525 F. Supp. 3d at 291 n.16.  Because the Court has concluded that Continental was not mistaken in denying coverage under the

Policy, dismissal of LGH's claim under Chapters 93A and 176D is warranted in the pending case.

### ORDER

For the foregoing reasons, the motion to dismiss of defendant (Docket No. 19) is **ALLOWED.**

**So ordered.**

 /s/ Nathaniel M. Gorton   
Nathaniel M. Gorton
United States District Judge

Dated:  February 24, 2023